RECEIVED
BY: _____
MAY 0 2 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

FILED
CHARLOTTE, N. C.
APR 2 7 2006
U. S. DISTRICT COURT
W. DIST. OF N. C.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:06CR100-V

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **BILL of INFORMATION** |
| ) | |
| v. ) | Violation: |
| ) | 18 U.S.C. § 2319 |
| ) | 18 U.S.C. § 371 |
| ) | 17 U.S.C. § 506 |
| DAVID MORVANT ) | |

Certified to be a true and
correct copy of the original.
U.S. District Court
Frank G. Johns, Clerk
Western District of N.C.
By: _____
Deputy Clerk
Date: 4-28-2006

THE UNITED STATES ATTORNEY CHARGES:

### COUNT ONE

**Background**

At all times relevant to this Information:

1. During the 1990s, individuals skilled in cracking digital copyright protection systems organized themselves into national and international groups called "warez" groups after the term "software." These groups are dedicated to intellectual property "piracy," that is, the unauthorized, illegal reproduction and distribution of copyrighted computer software, including games, and digital entertainment, including movies and music. Warez groups distribute pirated software, movies and music over the Internet, and compete with one another to be the first to release new, high quality pirated products, within an elaborate underground Internet society, known as the "warez scene." Due in part to the activities of warez groups, pirated versions of software applications, movies and music are available worldwide, electronically and on optical disc, sometimes even before they are made commercially available to the public.

2. Warez groups are often structured, hierarchical organizations comprised of members in various countries who have specialized skills and roles in the piracy of digitized intellectual property. Some warez groups specialize in obtaining "pre-release" intellectual

property for piracy, often from company or distribution insiders, or software testers, who have access to final versions of new products which have yet to be released to the public. Other warez groups concentrate on "cracking" copyright protection systems by removing or otherwise circumventing copyright protection controls like encryption, serial numbers, tags, duplication controls, and/or security locks. Still other groups or individuals act as couriers, distributing pirated intellectual property over the Internet to warez sites worldwide.

3. Warez members typically store their pirated intellectual property on servers employing a protocol known as a file transfer protocol ("FTP") which allows other individuals to download pirated product from, and upload pirated product to, that server. Access to warez FTP servers, or sites, is nearly always password-protected, and many site operators protect their cache of pirated software, movies and music, through a combination of sophisticated security measures.

4. Members of the warez scene frequently communicate with each other over the Internet using "real time" software applications, such as "Internet Relay Chat" ("IRC"), encryption, and closed channels to avoid detection by law enforcement. As a further security precaution, most warez members conceal their Internet identities by assuming aliases, and many disguise their Internet addresses, and thus their true locations, by routing Internet communications through another computer known as a "virtual host" or "bounce box" which is configured to appear falsely as the source of the communication.

5. The reasons why individuals become members of warez groups vary. Common to virtually all warez members, however, is the desire for personal financial gain through access to vast quantities of free software, movies and music available on warez FTP sites. A few of the larger warez groups also sell their pirated product for commercial gain. Other motives besides profit include the thrill and social comradery members obtain through

clandestine participation in the illegal activity; and the reputation and fame that attends membership and participation in the "top" warez groups.

Object of the Conspiracy

6. From on or before June 24, 2002, through April 21, 2004, both dates being approximate and inclusive, in Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendant,

DAVID MORVANT,

did knowingly and voluntarily combine, conspire, confederate, and agree with others, willfully and for purposes of private financial gain, to infringe a copyright by the reproduction and distribution, during a 180-day period, of at least ten (10) copies of one (1) or more copyrighted works which have a total retail value of more than $2,500, in violation of Title 18, United States Code, Section 2319(a) and (b)(1), and Title 17, United States Code, Section 506(a)(1).

Defendant's Manner and Means within the Conspiracy

8. The ways, manner and means by which the defendant, DAVID MORVANT, sought to achieve the objects of this conspiracy included, but were not limited to, the following:

a. It was a part of the conspiracy that the defendant, DAVID MORVANT, would become an active participant in the the warez scene.

b. It was further a part of the conspiracy that the defendant, DAVID MORVANT, would control and control access to a 500 gigbyte FTP warez server named "Gator Farm" or "GF" located in the Western District of Louisiana.

c. It was a further part of the conspiracy that the defendant, DAVID MORVANT, would arrange for a "bounce box" in the Western District of North Carolina

to be used by coconspirators accessing the FTP server Gator Farm.

      c.    It was further a part of the conspiracy that the defendant, DAVID MORVANT, would allow other co-conspirators to access Gator Farm so that they could upload hundreds of pirated copyright-protected digital titles, consisting of software applications, computer games, movies and music, for further distribution, and could download hundreds of such copyright-protected digital titles for further distribution and their own personal use and financial gain.

<u>Overt Acts</u>

    9.    In furtherance of the conspiracy, and to accomplish its unlawful objectives, the defendant, DAVID MORVANT, from on or about October 12, 2002, through April 21, 2004, authorized coconspirators to transfer digital files, including pirated, copyright-protected software applications, computer games, movies and music, to and from Gator Farm. During this period of time, users accessed Gator Farm through a bounce box in the Western District of North Carolina in order to initiate these file transfers. Each such access constituted an overt act committed in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 371.

GRETCHEN C. F. SHAPPERT
UNITED STATES ATTORNEY

*(signature)*

COREY F. ELLIS
ASSISTANT UNITED STATES ATTORNEY

ERIC J. KLUMB
SENIOR COUNSEL
U.S. DEPARTMENT OF JUSTICE

The undersigned asserts, under oath, that there is probable cause to believe that the crimes alleged in the foregoing Bill of Information were committed by DAVID MORVANT.

Eric J. Klumb
Senior Counsel

5